1 | Counsel listed on next page

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINO MARAVENTANO, NEESHA KURJI, | **Master Case No. 10-cv-2671 JM (JLB)** |
| | *Honorable Jeffrey Miller* |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF CLASS FOR SETTLEMENT PURPOSES, PRELIMINARY AWARD OF CLASS COUNSELS' ATTORNEY FEES AND NAMED PLAINTIFFS' INCENTIVE AWARDS** |
| vs. | |
| NORDSTROM, INC., a Washington corporation; DOES 1-100, inclusive, | |
| Defendants. | |
| Gina BALASANYAN, an individual, and Nune NALBANDIAN, an individual, on behalf of themselves and all others similarly situated, | Date:   June 26, 2014 Time: 10:00 a.m. Courtroom: 5D |
| Plaintiffs, | |
| vs. | |
| NORDSTROM, INC., a Washington corporation; DOES 1-100, inclusive | |

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

DEASON & ARCHBOLD
David D. Deason, Bar No. 207733
Matthew F. Archbold, Bar No. 210369
3300 Irvine Avenue, Suite 245
Newport Beach, California 92660
Telephone: +1.949.794.9560
Email:  david@yourlaborlawyers.com
Email:  matthew@yourlaborlawyers.com

BARNHILL & VAYNEROV LLP
Steven M. Barnhill, Bar No. 123000
Maxim Vaynerov, Bar No. 177520
11400 W. Olympic Wilshire Boulevard, Suite 200
Los Angeles, California 90064
Telephone: +1.310.943.8989
Email:  vaynerov@bv-llp.com
Email:  barnhill@bv-llp.com

*Attorneys for Individual and Representative Plaintiffs
Gino Maraventano and Neesha Kurji*

SCHWARCZ, RIMBERG, BOYD & RADER LLP
Kathryn Lee Boyd, Esq. (SBN 189496)
Darcy R. Harris, Esq. (SBN 200594)
Jeff D. Neiderman, Esq. (SBN 203818)
Sherli Shamtoub, Esq. (SBN 270022)
6310 San Vicente Boulevard, Suite 360
Los Angeles, California 90048
Phone: (323) 302-9488

*Attorneys for* Individual and Representative Plaintiffs
*Gina Balasanyan and Nune Nalbandian*

Motion for Preliminary Approval of Class Action  Settlement       Master Case No.10-cv-2671 JM (JLB)

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on June 26, 2014 at 10:00 a.m., or as soon thereafter as counsel may be heard by the Hon. Jeffery Miller in Courtroom 5D of the above-entitled court, located at 221 West Broadway, Suite 5190, San Diego, California 92101, representative plaintiffs Gina Balasanyan, Nune Nalbandian, Gino Maraventano, Neesha Kurji (collectively "Named Plaintiffs") will, and hereby do, move the Court for an Order:

(1) Granting preliminary approval of the Stipulated Settlement;

(2) Conditionally certifying the class as defined herein by expanding the Class Definition to include previously excluded putative class members who were subject to Nordstrom's post-litigation arbitration agreement;

(3) Approving the Notice of Settlement and Class Member Opt-in and Claim Form;

(4) Directing that Notice of Settlement and Class Member Opt-in and Claim Form be given to the Class per the terms of the Stipulated Settlement; and

(5) Setting a final approval hearing on November 24, 2014 at 10:00 a.m. to determine whether the Stipulated Settlement is fair, reasonable and adequate and whether an order awarding attorneys' fees, reimbursement of expenses and incentive awards should be approved.

DATED:   March 23, 2014          DEASON & ARCHBOLD


                                 /s/  Matthew F. Archbold
                                 By:  Matthew F. Archbold
                                 Attorneys for: Individual and Representative
                                 Plaintiffs Gino Maraventano and Neesha
                                 Kurji

1
2

DATED:   March 23, 2014          BARNHILL & VAYNEROV LLP

3
4
5
6
7

/s/  Maxim Vaynerov
By:  Maxim Vaynerov
Attorneys for: Individual and Representative
Plaintiffs Gino Maraventano and Neesha
Kurji

8
9
10

DATED:  March 23, 2014          SCHWARCZ, RIMBERG, BOYD &
RADER LLP

11
12
13
14

/s/  Kathryn Lee Boyd
By:  Kathryn Lee Boyd
Attorneys for: Individual and Representative
Plaintiffs Gina Balasanyan and Nune
Nalbandian

15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Motion for Preliminary Approval of Class Action  Settlement          Master Case No.10-cv-2671 JM (JLB)

TABLE OF CONTENTS

I.   INTRODUCTION……………………………………………………………1

II.  STATEMENT OF FACTS AND BACKGROUND……………………….2

    A.   Procedural History…………………………………………………...2

    B.   Discovery……………………………………………………5

III. THE MATERIAL TERMS OF THE STIPULATED SETTLEMENT…….6

IV.  THE STIPULATED SETTLEMENT CLASS INCLUDES THOSE
PUTATIVE CLASS MEMBERS WHO WERE EXCLUDED UNDER THE
JUNE 2011 DISPUTE RESOLUTION AGREEMENT……………………11

    A.   The Stipulated Settlement Class does not Materially Differ from the
Certified Class……………………………………………………11

    B.   The Stipulated Settlement Class Meets the Requirements of FRCP 23
(a) & FRCP 23 (b)(3)……………………………………………11

        i.   The Numerosity Requirement is Satisfied………………………...12

        ii   Common Issues of Law and Fact Exist………………………….13

        iii  The Typicality Requirement is Satisfied…………………………14

        iv.  Named Plaintiffs and Counsel Adequately Represent the Interests of
the Stipulated Settlement Class……………………………………15

        v.   Common Questions of Law and Fact Predominate…………………16

V.   STANDARDS FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT………………………………………………….…17

VI.  THE STIPULATED SETTLEMENT MEETS THE STANDARDS FOR
PRELIMINARY APPROVAL…………………………………….…18

    A.   The Stipulated Settlement is the Result of Serious, Informed,
Non-Collusive Negotiations………………………………….……19

    B.   There was Sufficient Investigation and Discovery…………………19

C.      Class Counsel is Experienced…………………………………………20

D.      The is No Current Opposition within the Class……………………..20

E.      The Stipulated Settlement is Fair, Reasonable and Adequate……….20

F.      The Attorney Fees and Costs are Reasonable and Fair……………...24

G.      The Enhancement for Named Plaintiffs is Reasonable and Fair…….24

VII.    CLASS NOTICE ACCURATELY SETS FORTH THE MATERIAL TERMS
        OF THE SETTLEMENT………………………………………………..…25

VIII.   CONCLUSION………………………………………………………….…25

TABLE OF AUTHORITIES

<u>**Case**</u>

*Amchem Prods., Inc. v. Windsor*,

    521 U.S. 591, 620 (1997)…………………………………………………..12

*Armenta v. Osmose*,

    135 Cal. App. 4th 314, 322-24 (2005) ……………………………..……23

*Armstrong v. Davis*,

    275 F.3d 849, 868 (9th Cir. 2001)………………………………………...…13

*Bluford v. Safeway Stores, Inc*.,

    216 Cal. App. 4th 864 (2013) …………………………………………17

*Cotton v. Hinton*,

    559 F.2d 1326, 1330 (5th Cir.1977)…………………………….…………..18

*Estrada v. FedEx*,

    154 Cal. App. 4th 1, 14-15 (2007)……………………………….………12

*Flinn v. FMC Corporation*,

    528 F.2d 1169 (4th Cir. 1975)……………………………………..…..18

*Glass v. UBS Fin. Servs*.,

    2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007)……………22, 25

*Hanlon v. Chrysler Corp*.,

    150 F.3d 1011, 1019 (9th Cir. 1998)………………………….…13, 14, 18

*Hanon v. Dataproducts Corp*.,

    976 F.2d 497, 508 (9th Cir. 1992) ……………………..……………14, 16

*In re General Motors Corp. Engine Interchange Litig*.,

    594 F.2d 1106, 1126 (7th Cir. 1979) …………………………...……..19

*In re General Motors Corp. Pick-up Truck Fuel Tank Products Liab. Litig*.,

    55 F.3d 768, 785 (3rd Cir. 1995) ……………………………….……..19

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

iii

Motion for Preliminary Approval of Class Action  Settlement        Master Case No.10-cv-2671 JM (JLB)

*In re Mego Financial Corp. Securities Litigation,*

    213 F.3d 454, 463 (9th Cir. 2000)……………………………………………..25

*In re Tableware Antitrust Litig.,*

    484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)……………………….……….1

*Irwin v. Mascott,*

    2001 U.S. Dist. LEXIS 3285 * 11 (N.D. Cal. Feb. 27, 2001)………………12

*Kamar v. Radio Shack Corp.,*

    254 F.R.D. 387, 396 (C.D. Cal. 2008) ………………………….....14 , 15

*Leyva v. Medline Indus.,*

    716 F.3d 510, 2013 U.S. App. LEXIS 10649 (9th Cir. 2013) ………….....16

*Linney v. Cellular Alaska P'ship,*

    151 F.3d 1234, 1242 (9th Cir.1998)…………………………………………18

*Molders' and Allied Workers Local Union No. 164 v. Nelson,*

    102 F.R.D. 457, 461 (N.D. Cal. 1983)………………………………………12

*Officers for Justice v. Civil Serv. Commission,*

    688 F.2d 615, 625 (9th Cir. 1982)…………………………………………18

*Peabody v. Time Warner Cable, Inc.,*

    California Supreme Court, Case No. S204804……………………….....23

*Staton v. Boeing Co.,*

    327 F.3d 938, 959 (9th Cir. 2003) ………………………………..……..19

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.,*

    2002 U.S. Dist. LEXIS 10546 *25 (C.D. Cal. 2002) ………………………16

*Valentino v. Carter-Wallace,*

    97 F.3d 1227, 1234 (9th Cir. 1996) …………………………………..…16

*Van Bronkhorst v. Safeco Corp.,*

    529 F.2d 943, 950 (9th Cir. 1976)…………………………………………..18

*Wren v. RGIS Inventory Specialists,*

     256 F.R.D. 180, 210 (N.D. Cal. 2010) …………………………………15, 17

**<u>Statute</u>**

FRCP 23……………………………………………………………………*passim*

**<u>Secondary Authority</u>**

*Newberg on Class Actions,* (3d Ed. 1992) §11.51…………………….…………..18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

By way of this motion, the Parties[1] seek preliminary approval of the proposed settlement reached in the consolidated class actions, *Maraventano, et al. v. Nordstrom*, Case No. 10-CV-02671-JM ("Maraventano Action") and *Balasanyan, et al. v. Nordstrom*, Case No. 11-CV-02609-JM ("Balasanyan Action") (collectively the "Action"), which allege, among others claims, violation of minimum wage laws under California Labor Code ("Labor Code") against defendant Nordstrom, Inc. ("Nordstrom" or "Defendant") (hereinafter the "Stipulated Settlement").

As set forth below, the Stipulated Settlement is well "within the range of possible approval," such that the Court should grant preliminary approval, authorize notice to the Class, and schedule a final approval hearing.  *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  Named Plaintiffs are represented by counsel experienced in class action litigation and believe the Stipulated Settlement is fair, reasonable and adequate.  The Stipulated Settlement was negotiated at arm's-length following over three years of litigation, which included extensive discovery and motion practice, and two full-day mediations, along with countless hours of further negotiations between counsel.  It provides significant consideration for Class Members with a total settlement package of 7.65 million dollars.  Moreover, the Stipulated Settlement establishes a cash and voucher fund of 5.3 million dollars to Class Members. [2]

---

[1] Plaintiffs Gina Balasanyan, Nune Nalbandian, Gino Maraventano, Neesha Kurji (collectively "Named Plaintiffs") and Nordstrom are hereinafter referred to collectively as the "Parties."

[2] Attorney's fees and costs are not deducted from Class Members' monetary and voucher awards; attorney's fees and costs were separately negotiated and do not impact the amount reserved for Class Members.  As discussed further below, the total settlement amount, including attorney's fees, is $7,650,000.00, broken down as follows:  (a) $2,700,00.00 as monetary recovery; (b) $2,600,000.00 as voucher

Thus, by this motion, Named Plaintiffs and Class Counsel[3] hereby commence the court approval process for the settlement of class actions.  Specifically, Named Plaintiffs and Class Counsel respectfully request that the Court enter an order: (1) granting preliminary approval of the Stipulated Settlement; (2) certifying the class as defined herein by expanding the Class Definition to include previously excluded putative class members who were subject to Nordstrom's post-litigation arbitration agreement; (3) approving the Parties' Notice of Class Action Settlement; (4) directing that notice of the Stipulated Settlement be given to the Class per the terms of the Stipulated Settlement; and (5) setting a final approval hearing to determine whether the Stipulated Settlement is fair, reasonable and adequate and whether an order awarding attorneys' fees, reimbursement of expenses and incentive awards should be approved.

Accordingly, Plaintiffs respectfully request that the Court grant this motion.

## II.    STATEMENT OF FACTS AND BACKGROUND

### A. Procedural History

On October 20, 2010, the Maraventano Action was filed in the Superior Court for the County of San Diego as a putative class action on behalf of all commissioned sales persons employed by Nordstrom, alleging that Nordstrom: (1) maintained a policy whereby the putative class members were not paid minimum wage for all hours worked before and after the store opening and closing time communicated to the public, unless they failed to meet their minimum commission draw, in violation of Labor Code §1197; (2) did so "willfully," entitling the putative class members to penalties pursuant to Labor Code §203; (3) failed to properly document hours worked at correct rates of pay in violation Labor Code §226; and

---

awards; (c) $2,300,000.00 as attorney's fees; and (d) $50,000.00 as costs.
[3] Class Counsel is comprised of the law firms of Deason & Archbold, Barnhill & Vaynerov LLP, and Schwarcz, Rimberg, Boyd & Rader, LLP (collectively "Class Counsel").

(4) violated Business & Professions Code §17200 *et seq.* On December 28, 2010, Nordstrom removed the Maraventano Action to the Southern District of California.

On April 5, 2011, the Balasanyan Action was filed as a putative class action against Nordstrom in the Los Angeles County Superior Court alleging the same claims as the Maraventano Action in addition to violations of the Fair Labor Standards Act ("FLSA"), Breach of Contract, and PAGA violations. Nordstrom removed the Balasanyan Action to the Central District Court of California, then by an opposed motion to change venue, ultimately to this District Court. On October 7, 2011, Nordstrom moved to compel arbitration of the Balasanyan Action based on its post-litigation arbitration agreement that included a class action waiver (the "June 2011 Dispute Resolution Agreement"). Nordstrom did not compel arbitration in the Maraventano Action because the June 2011 Dispute Resolution Agreement only applied to current Nordstrom employees.[4] Nordstrom also moved to consolidate the Balasanyan and Maraventano Actions.

In an order dated March 8, 2012 the District Court granted Nordstrom's motion to consolidate and denied Nordstrom's motion to compel arbitration of the Balasanyan Action (the "March 8 Order"). Shortly thereafter, Nordstrom appealed the March 8 Order denying arbitration (the "Appeal"), and moved to stay the Balasanyan Action pending the Appeal. On May 30, 2012, the District Court denied Nordstrom's motion to stay the Balasanyan Action pending appeal. Nordstrom then filed a motion in the United States Court of Appeals for the Ninth Circuit to stay the District Court's proceedings in the Balasanyan Action pending the Appeal. On August 9, 2012, the Ninth Circuit denied Nordstrom's motion to stay the District Court's proceedings pending the Appeal.

---

[4] Plaintiffs Gina Balasanyan and Nune Nalbandian are still employed as Nordstrom draw commission employees. Plaintiffs Gino Maraventano and Nesha Kurji were no longer employed by Nordstrom at the time Nordstrom rolled out its June 2011 Dispute Resolution Agreement, and filed suit as former Nordstrom draw commission employees.

1   On October 8, 2012, Nordstrom filed separate motions for summary

2   judgment in the Maraventano Action and the Balasanyan Action.  On December 20,

3   2012, the District Court granted Nordstrom's motion for summary judgment on the

4   Balasanyan Action's FLSA claim, but denied summary judgment for all other

5   claims (the "December 20 Order").  On January 17, 2013, Nordstrom filed motions

6   for reconsideration of the December 20 Order, and for certification of the December

7   20 Order for interlocutory appeal and to stay proceedings.  On March 6, 2013, the

8   District Court denied said motions.[5]

9   On March 6, 2013, separate motions for class certification were filed in the

10  Maraventano Action and the Balasanyan Action.  On August 12, 2013 this Court

11  certified a class of all persons employed by Nordstrom within the state of California

12  from October 20, 2006 through the present date who were or are paid on a draw

13  commission basis, provided they were first employed prior to distribution of the

14  June 2011 Dispute Resolution Agreement.  The causes of action certified by the

15  Court include Named Plaintiffs' claims that Nordstrom: (1) maintained a policy

16  whereby the putative class members were not paid minimum wage for all hours

17  worked before and after the store opening and closing time communicated to the

18  public, unless they failed to meet their minimum commission draw, in violation of

19  Labor Code §1197; (2) did so "willfully," entitling the putative class members to

20  penalties pursuant to Labor Code §203; (3) failed to properly document hours

21  worked at correct rates of pay in violation Labor Code §226; (4) violated Business

22  & Professions Code §17200 *et seq*; and (5) violated the Private Attorney General

23  Act (Labor Code § 2699).

24

25  [5] On April 3, 2013, Nordstrom filed a Petition for Writ of Mandamus with the Ninth
    Circuit to vacate the December 20 Order.  Nordstrom further requested that the

26  Ninth Circuit direct the District Court to issue a stay of all proceedings pending the
    resolution of Nordstrom's Petition.   The Ninth Circuit denied Nordstrom's Petition

27  on June 17, 2013, and ordered Nordstrom's counsel to show cause why monetary

28  sanctions should not be imposed for the filing of a frivolous petition.

On August 28, 2013, Named Plaintiffs filed a Motion for Approval of Notice to Class.  After a hearing and court ordered meet and confer between the parties, the Notice to Class Members was approved on November 1, 2013.

The Parties agreed to mediate the Action and stay the mailing of the Notice to Class Members pending the conclusion of mediation.   On December 2, 2013, the Parties attended a full-day mediation with a knowledgeable and respected mediator. The parties were unable to reach a resolution.[6]  On January 9, 2014, the Parties attended a second full-day mediation with the same mediator.  Thereafter, and for approximately three months, the parties continued to engage in robust settlement talks.   On March 28, 2014, the Parties executed a Memorandum of Understanding ("MOU") for the Stipulated Settlement of the Maraventano Action and the Balasanyan Action.[7]

**B. Discovery**

The Parties have conducted extensive investigation of and discovery into the relevant facts and the law during the prosecution of these actions.  Combined, Named Plaintiffs have propounded four (4) sets of requests for production, and nine (9) sets of special interrogatories.  Nordstrom has provided hundreds of pages of written responses and has produced tens of thousands of pages of documents electronically in response to Named Plaintiffs' requests.  These documents include those relating to Nordstrom's commission plans, Nordstrom's compensation policies, Nordstrom's procedures for time and record keeping, payroll practices, merchandise sales procedures, posted store operating hours, the Named Plaintiffs'

---

[6] On December 6, 2013, the Ninth Circuit heard oral argument on the Appeal, and took the matter under submission.

[7] On April 2, 2014, the Parties filed a stipulated motion requesting to vacate litigation deadlines because of the Stipulated Settlement.  On March 8, 2014, the Court granted the Parties' motion.  The Ninth Circuit has also been informed of the proposed class settlement and has stayed its consideration of the Appeal pursuant to its April 3, 2014 Order.

1  pay records, Named Plaintiffs' sales transactions, time and payroll records for

2  numerous other class members, sales transaction records for hundreds of other class

3  members, and documents pertaining to activities performed by draw commission

4  employees before and after the store operating hours.

5        Named Plaintiffs traveled to Seattle, Washington to take a two-day

6  deposition of Nordstrom's person most knowledgeable; the deposition covered a

7  combined list of over 50 deposition topics.  Nordstrom took the depositions of all

8  four Named Plaintiffs, including twice taking the depositions of Named Plaintiffs

9  Gina Balasanyan and Nune Nalbandian.  Nordstrom also propounded requests for

10  production and special interrogatories.  In addition, the Parties traveled to Chicago,

11  Illinois, where Nordstrom took the deposition of six non-party witnesses.

12  **III.    THE MATERIAL TERMS OF THE STIPULATED SETTLEMENT**

13        The Stipulated Settlement seeks to resolve the Maraventano Action and

14  Balasanyan Action's class claims in their entirety for a total combined sum of

15  $7,650,000.00 (the "Total Settlement Package").  The Total Settlement Package

16  consists of: (a) $2,700,00.00 as monetary recovery to the Class (the "Monetary

17  Fund"); (b) $2,600,000.00 as voucher awards to the Class (the "Voucher Award");

18  (c) $2,300,000.00 maximum as attorney's fees; (d) $50,000.00 as costs; and (e)

19  $50,000.00 total from the Monetary Fund as incentive awards to the Named

20  Plaintiffs ($12,500.00 per Named Plaintiff) ("Incentive Awards").[8]

21        More specifically, the principal terms of the Stipulated Settlement are:

22        1.      The Stipulated Settlement Class is defined as: All persons who work or

23  have worked for Nordstrom in a draw commission position within the state of

24  California from October 20, 2006 through the date of preliminary approval.

25        2.      Class Members will receive a Notice of Preliminary Approval of Class

26  Action Settlement and Final Approval Hearing, advising them of the terms of the

27  ───────────────

28  [8] Declaration of Matthew Archbold ("Archbold Decl."), Ex. 1 (Stipulation for Class
    Action Settlement) at § 5.

Stipulated Settlement and their rights and responsibilities under it, including instructions regarding how the Class Member may participate in the Stipulated Settlement or object to it.  Settlement Class Members will also receive an Opt-in and Claim Form to fill out and return to the claims administrator if they wish to receive money under the Stipulated Settlement.  In order to receive a monetary and voucher recovery in this case, Class Members must submit a valid and timely Opt-in and Claim Form.[9]

     3.     Nordstrom will pay monetary recovery to Participating Class Members[10] from the Monetary Fund, not to exceed $2,700,00.00 in total recovery, based on the following calculation:

- First, the Parties would determine the total number of workweeks for all Class Members from October 20, 2006 through the date the Court grants preliminary approval.  In order to make this determination, Nordstrom has collated the data it collects during its normal course of business and produced that information in a spreadsheet format, along with a declaration from its Vice President of Human Resources Operations, to Class Counsel.[11] According to Nordstrom's records, the cumulative number of workweeks, excluding all misdraw workweeks, for Class Members from October 20, 2006 through December 15, 2013 is 1,608, 458.[12]  The projected total number of workweeks until the preliminary approval is 1,725,369. [13] Nordstrom's Vice President of Human Resources Operations attests that she would be "able to provide updated totals for the number of actual non-misdraw workweeks occurring from October 20, 2006 through the date of

---

[9]  Archbold Decl., Ex. 1 at Ex. 1 (proposed Notice of Preliminary Approval) and Ex. 2 (Opt-in and Claim Form).
[10] Class Members who submit valid and timely Opt-in and Claim Forms are hereinafter referred to as "Participating Class Members."
[11]  Archbold Decl., Ex. 2 (Declaration of Janis Walsh).
[12]  Archbold Decl., Ex. 2 at ¶ 4.
[13]  Archbold Decl., Ex. 2 at ¶ 5.

preliminary approval shortly after the anticipated preliminary approval date."[14]

- Next, Nordstrom will divide the Monetary Settlement Amount[15] by the total number of workweeks (based on the above determination). This calculation will yield the Initial Workweek Amount.[16]

- The Initial Workweek Amount is then multiplied by each Participating Class Member's total number of workweeks to arrive at each Participating Class Member's individual monetary settlement amount.[17]

- Nordstrom will retain any unclaimed or unused portions of the Monetary Settlement Amount, with the exception of a $1,245,000.00 payout minimum to Participating Class Members.[18] Thus, if less than 50% of the Monetary Settlement Amount is used, Participating Class Members are entitled to a supplemental monetary award.[19]

    4.    Nordstrom will issue a Voucher Award to all Participating Class Members. The Voucher Award will be divided into two distinct funds with a combined amount not to exceed 2,600,000.00: (1) the Voucher Payout Fund A, and (2) the Voucher Payout Fund B. Defendant shall retain up to 50% of any unclaimed or unused portions of Voucher Payout Fund A and/or the Voucher

---

[14] Archbold Decl., Ex. 2 at ¶ 6.

[15] The Monetary Settlement Amount is the difference between the Monetary Fund (2,700,00.00 ) minus the Incentive Awards (not to exceed $50,000.00), claims administrator costs ($150,000), payroll taxes as applicable, and Private Attorney General Act penalties ($10,000.00). *See* Archbold Decl., Ex. 1. All cash awards to Class Members will be subject to deductions for employee payroll taxes.

[16] Archbold Decl., Ex. 1 at §6(b).

[17] Archbold Decl., Ex. 1 at §6(b).

[18] This is a claims made settlement. However, although this Settlement is claims made, the Parties have agreed that Nordstrom will pay at least 50% of the Monetary Fund, which equates to approximately $1,350,000.00. *See* Archbold Decl., Ex. 1 at §6(b).

[19] Archbold Decl., Ex. 1 at §7(b).

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Payout Fund B.[20]  Vouchers can be used at any time (without expiration) and at any Nordstrom location in California.[21]

a.      Voucher Payout Fund A applies to Class Members who were employed by Nordstrom for less than three (3) years.[22]  Nordstrom has confirmed that as of December 15, 2013, there were 34,947 Class Members who were employed less than three (3) years during the class period.[23]  Because a substantial proportion of Class Members were employed less than three years (*see* section III(3)(b), *infra*), 87.34% of the Voucher Award would be divided on a pro-rata per person basis to Settlement Class Members in Voucher Payout Fund A.  Assuming all Voucher Payout Fund A Class Members submit a valid Claim Form, and based on the current number of Voucher Payout Fund A Class members, each would be entitled to a voucher award of approximately $65.00.[24]

b.      Voucher Payout Fund B applies to Class Members who were employed by Nordstrom for three (3) years or more.[25]   According to Nordstrom's records, as of December 15, 2013 there were 2,438 Class Members who were employed three (3) years or more during the class period.[26]  The remainder of the Voucher Award, 12.66%, would be divided on a pro-rata per person basis amongst Voucher Payout Fund B.  Assuming all Voucher Payout Fund B Class Members submit a valid Claim Form, and based on the current number of Voucher Payout Fund B Class members, each would be entitled to a voucher award of approximately $135.00.[27]

---

[20] Archbold Decl., Ex. 1 at §5(b)(i)-(ii).
[21] Similar to the Monetary Fund, Nordstrom has agreed to pay at least 50% of Voucher Award, for a total of $1,300,000.00.  Thus, if less than 50% of either Voucher Payout Fund A or Voucher Payout Fund B are claimed, Participating Class Members may receive a supplemental Voucher Award.  *See* Archbold Decl., Ex. 1 at §5(b).
[22] Archbold Decl., Ex. 1 at §5(b)(i).
[23] Archbold Decl., ¶16.
[24] Archbold Decl., ¶16.
[25] Archbold Decl., Ex. 1 at §5(b)(ii).
[26] Archbold Decl., ¶16.
[27] Archbold Decl., ¶16.

5.      Class Counsel's attorney's fees are capped at $2,300,000.00, and subject to the Court's approval.[28]  The dollar amount allocated to attorney's fees is separate and distinct from the Monetary Fund and Voucher Award, and does not in any way effect the sums available for distribution in either category.

6.      The costs incurred by Class Counsel during the course of the litigation will be capped at $50,000.00, and subject to this Court's approval.[29]  Similar to Class Counsel's attorney's fees, the dollar amount allocated to Class Counsel's costs is separate and distinct from the Monetary Fund and Voucher Award, and does not in any way effect the sums available for distribution in either category.

7.      The costs of claims administration will removed from the Monetary Fund.[30]  Claims administration costs are estimated to be $150,000.00.[31]

8.      PAGA penalties, in the amount of $10,000.00, will be removed from the Monetary Fund.[32]

9.      Finally, the amount of Incentive Awards shall be removed from the Monetary Fund.  Each Named Plaintiff may move this court for an enhancement of $12,500.00 (total of $50,000.00) for their time and effort they spent pursuing the litigation, including having their depositions taken, the risk to their reputation and of retaliation, and for the important benefits conferred on the Settlement Class Members as a result of their efforts.[33]

10.      If the Court grants final approval of the Stipulated Settlement, Class Members will be deemed to have released Defendant of all claims that were asserted or could have been asserted in the Maraventano Action and the Balasanyan Action.

---

[28] Archbold Decl., Ex. 1 at §8.
[29] Archbold Decl., Ex. 1 at §8.
[30] Archbold Decl., Ex. 1 at §8.
[31] Archbold Decl., ¶27.
[32] Archbold Decl., Ex. 1 at § 3(a).
[33] Archbold Decl., Ex. 1 at §8.

**IV.   THE STIPULATED SETTLEMENT CLASS INCLUDES THOSE PUTATIVE CLASS MEMBERS WHO WERE EXCLUDED UNDER THE JUNE 2011 DISPUTE RESOLUTION AGREEMENT**

**A. The Stipulated Settlement Class does not Materially Differ from the Certified Class**

As discussed above, this Court has certified a class of all persons employed by Nordstrom within the state of California from October 20, 2006 through the present date who were or are paid on a draw commission basis, provided they were first employed prior to distribution of the June 2011 Dispute Resolution Agreement (the "Certified Class").   The putative class members who were first employed after the distribution of the June 2011 Dispute Resolution Agreement were excluded from the Certified Class solely based on the date of their employment, and not because their claims differ in any respect from that of the Certified Class (hereinafter the "Dispute Resolution Putative Class Members"). *See* Class Certification Order, Maraventano Dkt. No. 127, p. 48:4-9.  The Court further certified Named Plaintiff and Class Counsel as representatives of the Certified Class. *See* Class Certification Order, p. 23-25:3-11.  The Parties submit that the inclusion of the Dispute Resolution Putative Class Members is fair and reasonable since they would have been included as Class Members if not for Nordstrom's decision to compel arbitration.

Accordingly, the Parties propose to alter the Certified Class definition to include putative class members that were excluded because of the 2011 Dispute Resolution Agreement.

**B. The Stipulated Settlement Class Meets the Requirements of FRCP 23 (a) & FRCP 23 (b)(3)**

"Federal Rules of Civil Procedure, and case law both indicate that the court may modify the class definition at any time before the final judgment, if the moving party shows sufficient evidence that the class as defined is unworkable." *Irwin v.*

*Mascott*, 2001 U.S. Dist. LEXIS 3285 * 11 (N.D. Cal. Feb. 27, 2001); *see also* FRCP 23(c)(1) ("An order under this subdivision may be conditional; and may be altered or amended before the decision on the merits.").

The standard for certifying a stipulated settlement class is whether the proposed class meets the requirements of Rule 23 (a) and (b)(3).  *See* FRCP 23(a)-(b)(3).  The same analysis is applied as when this Court previously certified the Certified Class, except that it is not necessary to establish the manageability requirement as to a settlement class.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (parties seeking class certification for settlement purposes must satisfy the requirements of Rule 23 except for manageability).

### ii.  The Numerosity Requirement is Satisfied

The prerequisite of numerosity is met if "the class is so large that joinder of all members is impracticable."  FRCP 23(a)(1).   A showing of numerosity is generally satisfied where more than 100 putative class members exist.  *See Molders' and Allied Workers Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 461 (N.D. Cal. 1983).  Here, the Certified Class consists of at least 20,000 draw commission Nordstrom employees.  *See* Class Certification Order, p. 13:18-21.  The Dispute Resolution Putative Class Members only increases the number of draw commission Nordstrom employees included in the class.   Accordingly, individual joinder is impracticable.  *See* Class Certification Order, p. 14:14-15.

The Stipulated Settlement Class is also easily ascertainable based on the set of common characteristics that allow class members to identify themselves.  *See Estrada v. FedEx,* 154 Cal. App. 4th 1, 14-15 (2007).  All California draw commission employees are categorized, and thereby identifiable, by specific position titles in Nordstrom's internal time management system (Oracle HRMS).[34]

---

[34] Balasanyan Dkt. No. 89-5, Declaration of Sherli Shamtoub ("Shamtoub Decl."), Ex. 3 (9.28.2012 Deposition of Camlynn Blumenthal) at 50:21-51:5; 53:1-2; 54:1-8; 56:3-6. Nordstrom maintains records of the position title of terminated

There is no distinction by title or position between the Dispute Resolution Putative Class Members and Certified Class Members.  Accordingly, the Stipulated Settlement Class meets Rule 23's numerosity requirement.  *See* Class Certification Order, p. 14:9-12 ("Here, the class description sufficiently identifies common characteristics so that members may easily identify themselves. And, as Nordstrom's internal system categorizes all employees by specific position title, Nordstrom may check the supposed class members against its own records.").

### iii. Common Issues of Law and Fact Exist

The Ninth Circuit construes commonality permissively.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "All questions of fact and law need not be common to satisfy the rule." *Id.*  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

The liability questions at issue for Dispute Resolution Putative Class Members and Certified Class Members are not just common, they are identical. The issues turn on the legality of Nordstrom's pay practices under California state law for draw commission employees who received commission compensation for work performed before and after store operating hours.  Furthermore, commonality is readily satisfied where a "lawsuit challenges a system wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

Here, both Dispute Resolution Putative Class Members and Certified Class Members solely earn commissions for work performed before and after store operating hours.  Thus, the Court's reasoning in the Class Certification Order readily applies to the certification of the Stipulated Settlement Class:

> The court finds that the dispute turns on matters that apply to the class as a whole, not on individualized facts. Nordstrom's policy

employees for seven years. *Id*. at 51:17-52:4.

is undisputed. The common question is whether salespeople were able to sell to customers during pre-opening, post-closing …. and consequently whether they should be compensated for that time with commissions as opposed to a separate hourly rate.

***

As the claims arise from Nordstrom's official policies and requirements, uniformly applied to all draw commission employees, both the named Plaintiffs and the prospective class share common complaints and allege common injuries. Accordingly, Plaintiffs share a common contention and have thus satisfied this requirement for the proposed California Classes.

Class Certification Order, p. 16:8-14; 17:1-5.

### iv. The Typicality Requirement is Satisfied

Similar to the commonality prong of Rule 23(a)(2), "[t]he Ninth Circuit construes the typicality requirement permissively." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 396 (C.D. Cal. 2008). "Representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, Named Plaintiffs' claims are co-extensive of the Dispute Resolution Putative Class Members and Certified Class Members because they are subject to, and have been injured by, the same policies uniformly applied by Nordstrom against all draw commission employees in California. *See Hanon*, 976 F.2d at 508. Indeed, similar to the Dispute Resolution Putative Class Members, Named Plaintiffs Gina Balasanyan and Nune Nalbandian are current Nordstrom employees who, according to Nordstrom, are subject to the June 2011 Dispute Resolution Agreement.[35] All Named Plaintiffs either currently or formerly worked as draw

---

[35] Balasanyan Dkt. No. 39-1, Defendant Nordstrom Inc.'s Memorandum of Points and Authorities in Support of Its Motion to Compel Arbitration and Stay all Civil Court Proceedings at 1:7-10.

1   commission sales persons in one or more of Nordstrom's store locations.[36]

2       Just like the Named Plaintiffs, Nordstrom compensates the Dispute

3   Resolution Putative Class Members and Certified Class Members pursuant to a plan

4   that pays them only commissions for all designated "selling time," and pays them

5   an hourly rate for all designated "non-sell time."[37]   Nordstrom's compensation plan

6   applies to all draw commission employees in California, including the Dispute

7   Resolution Putative Class Members, the Certified Class Members and Named

8   Plaintiffs.[38]   Thus, the claims and damages Named Plaintiffs allege on behalf of

9   themselves and the Dispute Resolution Putative Class Members and Certified Class

10   Members are typical.  *See* Class Certification Order, p. 22:3-9 (holding that Named

11   Plaintiffs' claims are typical of the Certified Class); *Kamar*, 254 F.R.D. at 396

12   ("Given the common policy, the fact that there have been variations in meetings

13   attended, scheduled shifts, and actual hours of work does not defeat typicality").

14       ***v.*  *Named Plaintiffs and Counsel Adequately Represent the Interests of***

15       ***the Stipulated Settlement Class***

16       Rule 23(a)(4) requires that the representative parties will fairly and

17   adequately protect the interests of the class.  "To satisfy this requirement, Plaintiffs

18   must establish that: (1) the class representatives do not have a conflict of interest;

19   and (2) class counsel will adequately represent the interests of the class."  *Wren v.*

20   *RGIS Inventory Specialists,* 256 F.R.D. 180, 210 (N.D. Cal. 2010).  This Court has

21   already appointed Named Plaintiffs as class representatives for the Certified Class.

22   *See* Class Certification Order, p. 25:10-11.  Similarly, Named Plaintiffs have no

23   conflicts of interest with the Dispute Resolution Putative Class Members, and are

24

25   [36] Balasanyan Dkt. No. 89-9, Balasanyan Decl. at ¶ 3; Balasanyan Dkt. No. 89-8, Nalbandian Decl. at ¶¶ 3-4; Maraventano Dkt. No. 97-4, Maraventano Decl. at ¶ 2;

26   Maraventano Dkt. No. 97-5, Kurji Decl. at ¶ 2.

27   [37] Balasanyan Dkt. No. 89-5, Shamtoub Decl. Ex. 1 Blum. Decl. ¶¶2, 7, 8, 10.

28   [38] Balasanyan Dkt. No. 89-5, Shamtoub Decl. Ex. 1 Blum. Decl. ¶¶2, 7, 8, 10; *Id*. at Ex. 3 (9.28.2012 Deposition of Camlynn Blumenthal) at 136:4-16.

1  willing and able to serve as class representatives for the Stipulated Settlement

2  Class.[39]  Likewise, Class Counsel has extensive litigation experience and is

3  committed to represent the interests of the Stipulated Settlement Class.[40]

4  ### vi. Common Questions of Law and Fact Predominate

5  The predominance inquiry tests whether proposed classes are "sufficiently

6  cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022.

7  Rule 23(b)(3) focuses on the relationship between the common and the individual

8  issues, with the goal of achieving judicial economy. *See Valentino v. Carter-*

9  *Wallace*, 97 F.3d 1227, 1234 (9th Cir. 1996).   If the individual issues do not

10 overwhelm the common questions so as to render the class action valueless, then

11 the predominance test is met. *See Thomas & Thomas Rodmakers, Inc. v. Newport*

12 *Adhesives & Composites, Inc.*, 2002 U.S. Dist. LEXIS 10546 *25 (C.D. Cal. 2002).

13 This Court has already held that the Certified Class has met the "more

14 stringent" standard of Rule 23(b)(3)'s predominance requirement based on

15 Nordstrom's uniform policy that requires draw commission employees to be

16 compensated with commissions during pre-opening and post-closing periods. *See*

17 Class Certification Order, p. 26:5-6; 38:23-25.  The Court further found that the

18 mere fact "that individualized determinations of damages may be necessary is

19 insufficient reason for the court to decline class certification per *Leyva v. Medline*

20 *Indus.*, 716 F.3d 510, 2013 U.S. App. LEXIS 10649 (9th Cir. 2013)."  Class

21 Certification Order, p. 39:8-10 (full citation added).

22 Nordstrom's uniform policy regarding the compensation of draw commission

23 employees applies without distinction to the Dispute Resolution Putative Class

24

25 [39] Balasanyan Dkt. No. 89-9, Balasanyan. Decl. at ¶ 4; Balasanyan Dkt. No. 89-

26 8, Nalbandian. Decl. at ¶ 19; Maraventano Dkt. No. 97-4, Maraventano Decl. at ¶¶7-9; Maraventano Dkt. No. 97-5, Kurji Decl. at ¶¶8-10.

27 [40] Balasanyan Dkt. No. 89-1, Boyd Decl. at ¶¶ 2, 3; Maraventano Dkt. No. 97-2,

28 Archbold Decl., at ¶¶9-10; Maraventano Dkt. No. 97-3, Vaynerov Decl. at ¶¶3-8.

Members and Certified Class Members[41], and therefore qualifies the Stipulated

Settlement Class for certification under the predominance requirement of Rule

23(b)(3). *See Wren,* 256 F.R.D. at 204 ("Thus, where the employer has a uniform

policy that is uniformly applied, the appropriateness of class certification is 'easily

established.'"); *see also Bluford v. Safeway Stores, Inc*., 216 Cal. App. 4th 864

(2013).   In addition, the Court's thorough analysis regarding the lack of

preclusionary effect of individualized determinations of damages applies equally to

the Dispute Resolution Putative Class Members.  *See* Class Certification Order, p.

27:6-38:22; *see also Kurihara v. Best Buy Co*., 2007 U.S. Dist. LEXIS 64224, at

*28 (N.D.Cal. 2007) ("[C]ourts' discomfort with individualized liability issues is

assuaged in large part where the plaintiff points to a specific company-wide policy

or practice that allegedly gives rise to consistent liability.").

Accordingly, and based on Named Plaintiffs' satisfaction of each

requirement of Rule 23(a) and (b)(3), the Stipulated Settlement Class should be

certified to include the Dispute Resolution Putative Class Members.

## V.    STANDARDS FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Class actions may only be settled, compromised, or dismissed with court

approval.  *See* Fed. R. Civ. P. 23(e).  The private consensual agreement negotiated

by the parties is entitled to deference, and the Court's role "is limited to the extent

necessary to reach a reasoned judgment that the agreement is not the product of

fraud or overreaching by, or collision between, the negotiating parties, and that the

---

[41] Balasanyan Dkt. No. 89-5, Shamtoub Decl., Ex. 1 Blum. Decl. ¶¶2, 7, 8, 10, 13, 19, 30; *Id*. at Ex. 2 (9.27.2012 Deposition of Camlynn Blumenthal)  at 30:3-31:4, 33:3-11; *Id*. at Ex. 3 (9.28.2012 Deposition of Camlynn Blumenthal) at 93:12-19. Nordstrom maintains time records that identify the date, month, year and time each commission employee clocked into and out of Nordstrom's time keeping system. Balasanyan Dkt. No. 89-7, Shamtoub Decl., Ex. 23; Balasanyan Dkt. No. 89-5, Shamtoub Decl., Ex. 3 at 155:19-156:20.

settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 625 (9th Cir. 1982). The settlement as a whole, rather than its component parts, is the proper level of inquiry. *See Hanlon*, 150 F.3d at 1026. Particularly in class action suits, there is an overriding public interest in favor of settlement. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

When determining whether the settlement is fair and reasonable, the Court must keep in mind the presumption in favor of finding a settlement fair, and remain aware, as the parties must also be, "that compromise is the essence of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir.1977) ("In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties."); *see also Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir.1998) ("[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."). "The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Cotton*, 559 F.2d at1330. Indeed, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. *See Flinn v. FMC Corporation*, 528 F.2d 1169 (4th Cir. 1975). Finally, where there is no extrinsic evidence of fraud or collusion, the Court should assume that negotiations were conducted in good faith. *Newberg on Class Actions,* (3d Ed. 1992) §11.51.

## VI.   THE STIPULATED SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL

A settlement is presumed to be fair when: (1) the settlement is reached through arm's-length negotiation; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; and (3) counsel is experienced in

similar litigation; and (4) the percentage of objectors is small.  *See In re General Motors Corp. Pick-up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995); *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1126 (7th Cir. 1979).  The Ninth Circuit also considers (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) presence of governmental participant; and (8) the reaction of class members to the Stipulated settlement.  *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

### A. The Stipulated Settlement is the Result of Serious, Informed, Non-Collusive Negotiations

This settlement was reached following a voluntary exchange of information which culminated in two mediations facilitated by a neutral mediator with significant experience, and numerous hours of post mediation settlement discussions.  The settlement negotiations have been, at all times, adversarial and non-collusive in nature.[42]

### B. There was Sufficient Investigation and Discovery

As discussed in detail in Section II(b), Named Plaintiffs engaged in extensive discovery, including but not limited to, depositions of all Named Plaintiffs and Nordstrom's person most knowledgeable.  In addition, given the high number of Settlement Class Members, Nordstrom has created a sophisticated algorithm from which it can deduce the precise number of workweeks during which each individual Settlement Class Member worked prior to and after posted store hours without receiving a misdraw.[43]  Nordstrom's Vice President of Human Resources has attested to the total number of workweeks up to December 15, 2013, as well as her

---

[42] Archbold Decl., ¶2; Declaration of Kathryn Lee Boyd ("Boyd Decl."), ¶ 2.
[43] Archbold Decl., Ex. 2, ¶ 24.

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

ability to determine the remainder of the workweeks up to the date of preliminary approval.[44]   In addition, and in order for Class Counsel to independently verify Nordstrom's representation regarding the estimated actual damages to the class, Class Counsel conducted a damages sampling consisting of 100 randomly selected Nordstrom employees from five different Nordstrom store locations in California.[45] Thus, as a result of Named Plaintiffs thorough investigation and discovery, Class Counsel knowingly and intelligently evaluated the Stipulated Settlement and believes it to be fair and reasonable.

### C. Class Counsel is Experienced

Class Counsel is well-qualified to represent the Stipulated Settlement Class. Class Counsel is comprised of three qualified and experienced law firms, whose members have been appointed as class counsel both in this case as well as numerous others.[46]  The Court's determination at the class certification stage that Class Counsel was experienced to represent the interests of the Certified Class should yield a similar determination in this instance, and Class Counsel should be appointed as counsel for the Stipulated Settlement Class.

### D. The is No Current Opposition within the Class

To date, Class Counsel is not aware of any Settlement Class Member having expressed any opposition to the Stipulated Settlement.[47]  To the extent that there are any objectors, those individuals will have the opportunity to file their objections as provided in the Stipulated Settlement.

### E. The Stipulated Settlement is Fair, Reasonable and Adequate

The dollar amount of the Stipulated Settlement is fair, reasonable and adequate given the risks and expense of litigation and total possible recovery for the class.  The total settlement package is 7.65 million dollars, with 5.3 million

---

[44] Archbold Decl., Ex. 2, ¶¶ 4-5.

[45] Archbold Decl., ¶¶ 14-15; Ex. 2, ¶¶ 7-10; Ex. 3.

[46] Archbold Decl., ¶¶ 18-19; Boyd Decl., ¶ 4; Declaration of Maxim Vaynerov ("Vaynerov Decl."), ¶¶3-6.

[47] Archbold Decl., ¶20.

available to Class Members.  Class Counsel estimates that the actual damages[48] to the class is between $9,886,364 and $19,784,231, based on the following information provided by Nordstrom and calculations made by Class Counsel:

(1) In support of its opposition to Named Plaintiffs' motion for class certification, Nordstrom revealed, for the first time, the timesheets and payroll records for a subset of putative Class Members, which Class Counsel then used to derive a preliminary estimate of the average time spent per week before and after the posted store operating hours.   The per week time for pre-opening hours was estimated at 60 minutes per week prior to "posted" store hours, or 43 minutes per week when taking into account Nordstrom's assertion that its doors open ten minutes prior to "posted" opening time.  The per week time for post-closing hours was estimated as 26 minutes per week after "posted" store closing, or 17 minutes per week when taking into account Nordstrom's assertion that its doors stay open at least 10 minutes after "posted" closing time.[49]  Multiplying the per week time by the average minimum wage of $8.00 per hour for the class period yielded average damages per class member of $8.00 or $5.73 per week worked prior to "posted" store opening, and $3.46 or $2.27 per week after "posted" store closing.

(2) In conjunction with the December mediation, Nordstrom disclosed the total number of workweeks worked by draw commission employees from October 20, 2006 to April 15, 2013.  Later, Nordstrom confirmed that the total number of workweeks, from October 20, 2006 to December 15, 2013, is 1,608, 458, which is within reasonable range of the numbers disclosed during mediation.[50]  Nordstrom also represented that the projected total number of workweeks until the preliminary approval is 1,725,369.[51]

(3) In addition, Class Counsel has randomly selected 100 Class Members

---

[48] Estimates of actual damages does not include any liquidated damages or penalties.
[49] Archbold Decl., ¶12.
[50] Archbold Decl., Ex. 2 (Declaration of Janis Walsh) at ¶ 4.
[51] Archbold Decl., Ex. 2 at ¶ 5.

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

from five Nordstrom store locations in order to independently analyze Nordstrom's representation of the average damages per Class Member per workwork.[52]  If Nordstrom's represented damages – which formed the basis of the Parties' negotiation – did not reasonably conform to Class Counsel's independent randomly selected sampling of damages, Class Counsel would have the option to terminate the Stipulated Settlement.[53]  Based on Class Counsel's analysis, the average damages per workweek was reasonably within Nordstrom's represented damages.[54]

Based on this information, and drawing upon the strengths of Named Plaintiffs claims (e.g., their victories at the summary judgment and class certification stages) while taking into account the various risks particular to this class action (including an appeal of the Court's Order denying Nordstrom's Motion to Compel Arbitration) and the complexities of trying a class action of this size, Class Counsel negotiated a total settlement package of 7.65 million dollars, with 5.3 million dollars available to Class members.[55]  The dollar amount of the settlement is a significant percentage of the estimated actual damages.  *See Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 * (N.D. Cal. January 27, 2007) (approving class settlement for unpaid overtime wages where the settlement amount constituted approximately 25 to 35% of the estimated actual loss to the class). Thus, the Stipulated Settlement is well within the "range of reasonableness" to warrant preliminary approval.[56]

The Named Plaintiffs and Class Counsel recognize the expense and length of continued litigation against Nordstrom through trial and through any possible appeals.  The Named Plaintiffs and Class Counsel have also taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation.  Although Named Plaintiffs successfully defeated

---

[52] Archbold Decl., ¶¶ 14-15.
[53] Archbold Decl., ¶ 14.
[54] Archbold Decl., ¶ 15.
[55] Archbold Decl., Ex. 1, § 4.
[56] Archbold Decl. ¶ 16.

Nordstrom's motion for summary judgment, this Court indicated that it has not reached a "factual determination that Nordstrom's employees were not being compensated" for work performed during the forty minutes before and after Nordstrom's posted public operating hours.  Class Certification Order, p. 39 at n.12.  Rather, the Court cautioned Named Plaintiffs that they "should not assume that they have met their factual burden," and that Nordstrom could present "evidence indicating that Plaintiffs were in fact able to earn a commission during pre-opening [and] post-closing … time."  Class Certification Order, p. 39 at n.12.

Furthermore, although Named Plaintiffs believe the Court's ruling on Summary Judgment is in line with controlling California Supreme Court precedent, *Armenta v. Osmose*, 135 Cal. App. 4th 314, 322-24 (2005)[57], they acknowledge that if the California Supreme Court were to revisit the issue, there is a possibility that commission plans may be treated differently than their hourly and piece-meal counterparts.   Nordstrom maintains that the California Supreme Court's upcoming decision in *Peabody v. Time Warner Cable, Inc.,* Case No. S204804[58] would support Nordstrom's underlying argument that *Armenta* does not apply to commission plans.  The Named Plaintiffs and Class Counsel have also taken into consideration the risks inherent in any further litigation, including, without limitation, Motion for Decertification of the Class, renewed Motion for Summary Judgment, and (potentially bifurcated) trial.

Based on the foregoing, the Named Plaintiffs and Class Counsel believe the Settlement set forth in this Agreement, is a fair, adequate and a reasonable settlement, and is in the best interests of the Settlement Class.

### F.  The Attorney Fees and Costs are Reasonable and Fair

Class Counsel will apply to the Court for an award of attorneys' fees and

---

[57] Order Denying Summary Judgment, in part, Maraventano Dkt. No. 76, p. 9:13-18, 11:24-25.
[58] The California Supreme Court will hear oral argument in *Peabody* on June 4, 2014.  Archbold Decl., ¶ 29.

reimbursement of litigation expenses in an amount not to exceed $2,300,000.00.[59]

Since Class Counsel is composed of three separate law firms, the fee share amongst Class Counsel is as follows: (1) $661,250.00 to Deason & Archbold; (2) $661,250.00 to Barnhill & Vaynerov LLP; and (3) $977,500.00 to Schwarcz, Rimberg, Boyd & Rader, LLP.[60]  The fees and costs sought were negotiated between the Parties while negotiating Nordstrom's liability on the merits, and are separate and apart from the settlement amounts to be distributed to the Settlement Class Members.[61]  The determination of the exact dollar amount of fees to be awarded to Class Counsel will be in the discretion of the Court.[62]

The requested fee is fair compensation for undertaking over three years of complex, risky, expensive, and time-consuming litigation on a contingent basis.  To date, Class Counsel has accumulated a total of $2,522,474.75 in combined attorney's fees based on each attorney's respective hourly rate.[63]  In addition, Class Counsel has expended a total of $51,312.87 in combined costs.[64]  Thus, $2,350,000.00 in attorney's fees and costs – a significant reduction in the total attorney's fees and costs incurred to date – is more than reasonable and represents a reduction in the actual fees and costs actually incurred.

For all of these reasons, the attorney's fees amount negotiated between the Parties is reasonable and fair.

### G. The Enhancement for Named Plaintiffs is Reasonable and Fair

Class Counsel will also apply for an Incentive Award for each of the Named Plaintiffs in the amount of $12,500 each.[65]  Monetary enhancements are routinely granted to class representatives in class action cases and it is within the Court's discretion to issue such awards.  *See e.g.*, *In re Mego Financial Corp. Securities*

---

[59] Archbold Decl., Ex. 1 § 8.
[60] Archbold Decl., Ex. 1 § 8.
[61] Archbold Decl., ¶ 17.
[62] Archbold Decl., Ex. 1 § 8.
[63] Archbold Decl., ¶¶ 24-25 ; Boyd Decl., ¶ 8 Vaynerov Decl., ¶ 11.
[64] Archbold Decl., ¶ 26 ; Boyd Decl., ¶ 8; Vaynerov Decl., ¶ 13.
[65] Archbold Decl., Ex. 1 § 8.

*Litigation,* 213 F.3d 454, 463 (9th Cir. 2000); *Glass,* 2007 U.S. Dist. LEXIS 8476 *51 (awarding a total of $100,000.00 in enhancement awards to four class representatives ($25,000.00 each)).

Here, Named Plaintiffs spent a great deal of their personal time conferring with counsel, participating in discovery – including undergoing at least one full-day of deposition each, producing and reviewing documents, gathering evidence and witness contact information –, provided several declarations for and in opposition to dispositive motions, participated in settlement discussions at, before, and after mediation, and risked their reputation and chances of future employment.[66] The Plaintiffs risked retaliation in their current positions, as well as the risk of disclosure of this litigation to other employers. [67]

Accordingly, the Incentive Award of $12,500 per Named Plaintiff is just compensation for the risk undertaken, and thereby is reasonable and fair.

## VII.   CLASS NOTICE ACCURATELY SETS FORTH THE MATERIAL TERMS OF THE SETTLEMENT

The content of the notice informs the class of the material terms of the Stipulated Settlement, including the proposed fees and costs of administration, details about the court hearing on settlement approval and submission of objections, and how the class member can obtain additional information.[68]

## VIII.  CONCLUSION

For all the foregoing reasons, this Court should grant Named Plaintiffs' Motion for Preliminary Approval of the Stipulated Settlement, approve and authorize mailing of the attached Notice of Settlement and Class Member Opt-in and Claim Form, and schedule a final approval hearing on November 24, 2014.

---

[66] Archbold Decl., ¶28;
[67] Archbold Dec., ¶28; Boyd Decl., ¶ 6.
[68] Archbold Decl., Ex. 1 at Ex. A (proposed Notice of Preliminary Approval) and Ex. B (Claim Form)

1

2    DATED:   March 23, 2014          DEASON & ARCHBOLD

3

4                                    /s/  Matthew F. Archbold
                                     By:  Matthew F. Archbold
5                                    Attorneys for: Individual and Representative
                                     Plaintiffs Gino Maraventano and Neesha
6                                    Kurji

7

8    DATED:   March 23, 2014          BARNHILL & VAYNEROV LLP

9

10                                   /s/  Maxim Vaynerov
                                     By:  Maxim Vaynerov
11                                   Attorneys for: Individual and Representative
                                     Plaintiffs Gino Maraventano and Neesha
12                                   Kurji

13

14

15   DATED:  March 23, 2014          SCHWARCZ, RIMBERG, BOYD &
                                     RADER LLP
16

17

18                                   /s/  Kathryn Lee Boyd
                                     By:  Kathryn Lee Boyd
19                                   Attorneys for: Individual and Representative
                                     Plaintiffs Gina Balasanyan and Nune
20                                   Nalbandian

21

22

23

24

25

26

27

28